**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| George Taulman, | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )   Case No. 05-1118-WEB |
| | ) |
| Mike Hayden, Secretary of the Kansas | ) |
| Department of Wildlife in his official | ) |
| capacity, | ) |
| | ) |
|     Defendant. | ) |

**MEMORANDUM AND ORDER**

Now before the Court are Plaintiff's and Defendant's motions for summary judgment. (Docs. 23 and 27). Using essentially the same facts, both parties argue they are entitled to relief. The Court will first address Defendant's motion for summary judgment.

Plaintiff alleges that Kansas law violates the Privileges and Immunities Clause of the United States Constitution and 42 U.S.C. § 1983 by denying Plaintiff, a nonresident, the same rights to hunt as Kansas residents. Defendant admits Plaintiff, as a nonresident, is subject to hunting restrictions but claims those restrictions are consistent with the Privileges and Immunities Clause. The Court has jurisdiction pursuant to 28 U.S.C. § 1343 and 1331.

I. Standard.

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims..." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). The Court views the evidence and all

reasonable inferences in favor of the non-moving party. *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1108 (10th Cir. 2001). A fact is "material" if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 670 (10th Cir. 1998)). "An issue is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* A genuine factual dispute requires more than a mere scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler,* 144 F.3d at 670-671. The movant can do this by demonstrating a lack of evidence on an essential element of the nonmovant's claim. *Id.* at 671. "If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* (citing Fed. R. Civ. P. 56(e)).

"To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F. 3d at 671 (internal citations and quotations omitted). The nonmoving party cannot defeat a properly supported motion for summary judgment by relying on conclusory allegations; rather, the opposing party must come forward with significant admissible probative evidence supporting that party's allegations. *Anderson*, 477 U.S. at 256.

II. Facts.

1. Plaintiff resides in Taos, New Mexico and does not qualify as a resident as defined by Kansas Statute Annotated 32-701(p). (Pl. Ex. ¶ 2).

2. Plaintiff owns, with his wife, two ranches in western Kansas. One, located in Logan County, is comprised of approximately 4,500 acres. The other, located in Kiowa County, is comprised of approximately 1,700 acres. (Pl. Ex. A ¶ 6).

3. These ranches provide wildlife habitat and support significant numbers of wild turkey, mule and whitetail deer. The Logan County ranch supports a flock of at least 150 wild turkey and herds of 25 each of mule and whitetail deer. The Logan County ranch is the home base for the largest flock of wild turkey in the area. The Kiowa County ranch also supports wild turkey and a herd of at least 40 deer. (Pl. Ex. A ¶ ¶ 7-8); (Pl. Ex B ¶ 5).

4. Plaintiff manages his Kansas ranches primarily for wildlife and has invested money, time, and materials in improving and protecting wildlife habitat. At a cost of $12,000 he has fenced 2.5 miles of both banks of the Smokey Hill River which cuts through the Logan County ranch, to exclude livestock and protect the area for turkey habitat. This has resulted in removing about 400 acres from grazing at an annual loss of $4,000. (Pl. Ex. A ¶ ¶ 8-9); (Pl. Ex. B ¶ 4).

5. Plaintiff plants each year about 120 acres of his Logan County ranch in corn and milo which he leaves for consumption by wildlife. This effort costs Plaintiff approximately $4,120 annually. (Pl. Ex. A ¶ 12); (Pl. Ex. B ¶ 4).

6. At his own expense, Plaintiff has improved natural seeps and springs on his Logan County ranch so that they can more easily and reliably be used by wildlife. Additionally, Plaintiff maintains at a cost of approximately $2,600 annually windmills, pumps, and water tanks throughout the ranch, with the result that the increased availability has expanded productive wildlife habitat on

the ranch.  (Pl. Ex. ¶ 10).

7.  Plaintiff does not graze his Kiowa Ranch to enhance its qualities as wildlife cover and feed.  As a result of keeping his Kiowa Ranch out of agricultural production, it is used by a herd of deer as the place where they bed down and return after browsing.  Foregoing agricultural income from his Kiowa Ranch costs Plaintiff about $5,920 each year in lost income.  (Pl. Ex. A ¶ 13).

8.  Plaintiff instructs his ranch manager to patrol his ranches to protect the wildlife against poaching.  (Pl. Ex. A ¶ 11); (Pl. Ex. B ¶ 7).

9.  Plaintiff and his wife pay taxes to state and local governments in Kansas.  In 2004, they paid $8,848 in property taxes and $900 in personal taxes to Kansas state and local governments.  (Pl. Ex. A ¶ 14).

10.  Plaintiffs' family has experienced automobile accidents with wildlife.  Plaintiff has suffered three collisions with deer on Kansas roads.  (Pl. Ex. ¶ 15).

11.  Plaintiff has two daughters, ages 14 and 17.  Plaintiff's motivation for hunting is to instill hunting ethics and values in his daughters, use the animals for food, use the animal hides and antlers, strengthen family bonds, instill an appreciation of nature, wildlife and the role of the hunter to his family.[1]  He and his wife believe the experience of hunting is important for their children in today's world, where they are confronted by adverse messages in mass media and are pulled further from the natural world and the codes and traditions of the American hunter.  (Pl. Ex. A ¶ 4).  This

---

[1] Plaintiff makes a conclusory allegation that deer hunting is a commercial activity.  He supports this with a speculative statement that if he killed an antlered deer, he could sell the antlers.  This is not significant probative evidence.  Plaintiff provides no specific facts, for example:  Plaintiff's past income from such activity, customers, or prices of racks of antlers.  Given the paucity of facts to support this allegation, the Court will not consider it. See Fed. R. Civ. P. 56(e).

motivation was a factor in his decision to purchase the land and improve its wildlife habitat. (Pl. Ex. ¶ 5). Plaintiff does not seek to hunt deer and turkey on his property for recreational trophy hunting. (Doc. 31, Ex. A ¶ 3).

12. As a nonresident landowner, Plaintiff is not entitled to a special hunt-on-your-own land permit which can be transferred to family members. K.A.R. § 115-4-13(c)(2), (3); (Def. Ex. B at 15: 18-23). Around 700 to 900 special transferable hunt-on-your-own-land permits are issued each year to resident landowners. (Def. Ex. B at 26: 11-17). Of these special permits, a high percentage are transferred to nonresident family members. (Id. at 26: 4-10). Kansas' restriction of nonresident hunt-on-your-own-land permits limits the number of these permits that are used. This helps maintain the deer population and provides more hunting opportunities for residents. (Def. Ex. B at 38: 25 to 39: 23).

13. Other than a hunt-on-your-own land permit, Plaintiff, as a nonresident, is restricted to the use of a muzzleloader when hunting mule deer. (Pl. Ex. B at 46-47); Kan. Stat. Ann. 32-937(l)(2).[2] A muzzleloader is a one shot weapon with a limited range. (Id. at 46: 15-19). Muzzleloader rifles are used primarily for recreation. (Doc. 31, Ex. A ¶ 3).

14. Mule deer are a limited and vulnerable resource. (Pl. Ex. C at 46: 5-7). The purpose of restricting nonresidents to the use of muzzleloaders for hunt mule deer is to limit the number of mule deer taken by nonresidents. (Pl. Ex. C at 48: 10-14). If nonresidents were allowed the same hunting opportunities for mule deer with centerfire rifles as residents, it would reduce mule deer hunting for opportunities for residents. (Def. Ex. B at 58: 4-8).

15. Plaintiff, as a non-resident is not permitted to hunt wild turkey on his land. Plaintiff's

---

[2] The parties provide no citation to the law to support this statement of fact; however, Defendant admits these restrictions exist.

land is located in what the Kansas Department of Wildlife ("KDW") has designated as Unit 4, a limited unit for wild turkey hunting permits. Because the turkey population in Unit 4 is so limited, only 200 turkey permits are issued to residents. K.A.R. § 115-25-6(d)(4). If nonresidents were allowed to compete for available permits, it would reduce the number of permits that residents could obtain. (Def. Ex. C at 28: 12-23). If nonresident landowners were permitted to hunt turkeys on their land, it would pose no particular threat or danger to wild turkey. (Id. at 26: 4-15).

16. Residents provide political support for wildlife conservation and disproportionately volunteer for wildlife conservation projects; furthermore, residents disproportionately suffer the burdens caused by deer. (Def. Ex. D at 2-3).

17. Kansas does not pay for the feed consumed by the turkey and deer produced by Plaintiff's property. (Def. Ex. B at 53: 4-8). Kansas does not assume responsibility for traffic accidents caused by wildlife. (Id. at 53: 12-16). Kansas does not buy or sell wildlife. (Id. at 53: 17-18).

### III.  Analysis.

The Privileges and Immunities Clause of the United States Constitution provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. CONST. art. IV, § 2.

"Application of the Privileges and Immunities Clause to a particular instance of discrimination against out-of-state residents entails a two-step inquiry." *United Bldg & Constr. Trades Council v. Camden,* 465 U.S. 208, 218 (1984). First, the Court must decide whether the laws in question burden the privileges and immunities protected by the Clause. *Id.* If the "challenged

restriction deprives a nonresident of a protected privilege or immunity, under the second prong the restriction is invalid unless it is 'closely related to the advancement of a substantial state interest.'" *Nelson v. Geringer*, 295 F.3d 1082, 1090 (10th Cir. 2002) (quoting *Supreme Court v. Friedman*, 487 U.S. 59, 65 (1988)).

The Privileges and Immunities Clause "is not one the contours of which have been precisely shaped by the process and wear of constant litigation and judicial interpretation over the years since 1789." *Id.* at 789. Courts have held that certain laws violate the Privileges and Immunities Clause, including: disparate state taxing of nonresident commercial activity, *Ward v. Maryland,* 79 U.S. 418 (1871) and *Toomer v. Witsell*, 334 U.S. 385 (1948); limiting nonresident access to state courts, *McKnett v. St. Louis & S.F.R. Co.*, 292 U.S. 230, 233 (1934); limiting entry into profession of law to state residents, *Supreme Court of new Hampshire v. Piper*, 84 L. Ed. 2d 205 (1984); preferential hiring for state residents, *Hicklin v. Orbeck,* 437 U.S. 518 (1978); and residency requirements for abortions, *Doe v. Bolton*, 410 U.S. 179, 200 (1973).

However, not every state law which discriminates against nonresidents runs afoul of the Privilege and Immunities Clause. *Ferry v. Spokane P.& S.R. Co.,* 258 U.S. 314 (1922) (states can restrict a nonresident's right of dower in property); see *Hawaii Boating Assoc. v. Water Transp. Facilities Division*, 651 F.2d 661 (9th Cir. 1981) (equal right to access berth in a recreational boat harbor not fundamental); *Daly v. Harris*, 215 F. Supp. 2d 1098, 1112 (D. Hawaii 2002) (equal access to state nature preserve not fundamental).

> Some distinctions between residents and nonresidents merely reflect the fact that this is a Nation composed of individual States, and are permitted; other distinctions are prohibited because they hinder the formation, the purpose, or the development of a single Union of those States. Only with respect to those 'privileges' and 'immunities' bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident , equally.

*Baldwin v. Montana Fish and Game Comm'n*, 436 U.S. 371, 388 (1977).

In a case with similar facts, the Supreme Court held that disparities in Montana's hunting license system based on state residency did not violate the Privileges and Immunities Clause in Article IV of the Constitution. *Id.* at 383. The Court stated:

> Appellant's interest in sharing this limited resource on more equal terms with Montana residents simply does not fall within the purview of the Privileges and Immunities Clause. Equality in access to Montana elk is not basic to the maintenance or well-being of the Union. Appellants do not – and cannot – contend that they are deprived of a means of a livelihood by the system or of access to any part of the State to which they may seek to travel. We do not decide the full range of activities that are sufficiently basic to the livelihood of the Nation that the States may not interfere with a nonresident's participation therein without similarly interfering with a resident's participation. Whatever rights or activities may be "fundamental" under the Privileges and Immunities Clause, we are persuaded, and hold, that elk hunting by nonresidents in Montana is not one of them.

*Id.*

The Court notes that *Baldwin* is distinguishable from other Privileges and Immunities cases involving the taking of wildlife. In *Baldwin*, the Supreme Court held the taking of wildlife for recreation was not a fundamental right. *Id.* (activities which are not basic to the livelihood, maintenance, and well-being of the nation are not fundamental). Conversely, in *Toomer*, the taking of shrimp was held to be within the purview of the Privileges and Immunities Clause because it involved a nonresident's commercial livelihood. *Toomer*, 334 U.S. at 402; see also *Connecticut ex rel. Blumenthal v. Crotty,* 346 F.3d 84, 96 (2d Cir. 2003) (statutes may regulate an activity in a discriminatory fashion in the interest of protecting a natural resource if participation in that particular activity is unrelated to pursuit of a livelihood).

Plaintiff argues that *Baldwin* is distinguishable because he does not hunt for recreation. Plaintiff claims he hunts for the following reasons: to teach his children about hunting traditions, use the animals for food, use the animal hides and antlers, strengthen family bonds, and instill an

appreciation of nature. Plaintiff argues that his motives for hunting are more important than mere recreation and are more like those activities protected by the Privileges and Immunities Clause. The Court disagrees.

While Plaintiff's motives are different from those hunters in *Baldwin*, they are also different from the plaintiff in *Toomer* as they do not involve the pursuit of livelihood. The purposes behind Plaintiff's taking of wildlife does not implicate any known right under the Privileges and Immunities Clause nor do these motives rise to a level sufficient to be a fundamental right on their own. The ability of a nonresident to teach his family about the traditions of the American hunter and to use wildlife on equal footing with residents, are not basic to the livelihood, maintenance, or well-being of the nation.

Petitioner next argues that his status as a landowner gives him a fundamental right to hunt. To determine the nature of a landowner's right to hunt, the Court will look to Kansas law. *Minnesota ex rel. Hatch v. Hoeven,*— F.3d ----, WL 2165737 (8th Cir. August 3, 2006) (analyzing North Dakota law to determine whether land ownership confers a property right to hunt); see also *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972) (property interests are not created by the Constitution; rather, by state laws and rules securing benefits and entitlement to those benefits).

By statute, Kansas owns wildlife within the state.[3] Kan. Stat. Ann. 32-703. "At common

---

[3] The Court agrees with Plaintiff that a state's ownership of wildlife is not absolute; however, it still retains the authority to regulate the taking of game. See *Crow Tribe of Indians v. Repsis,* 73 F.3d 982, 990 (10th Cir. 1995); see *Hughes v. Oklahoma*, 441 U.S. 322 (1972). However, state claims of ownership are not to be ignored as they are "expressive in legal shorthand of the importance to its people that a State have power to preserve and regulate the exploitation of an important resource." *Toomer v. Witsell,* 334 U.S. 385, 402 (1948); *Douglas v. Seacoast Products, Inc.,* 431 U.S. 265, 284 (1977). Kansas law is consistent with this view as the Kansas Supreme Court stated "wild animals are declared to be subject to the control of the

9

law, a landowner traditionally had the right to hunt wild animals on his or her land". *Clajon Production Corp. v. Petera,* 70 F.3d 1566, 1575 (10th Cir. 1995). However, in Kansas, the right to hunt is a public right granted by statute. *Ottawa Hunting Ass'n v. State,* 178 Kan. 460, 465, 289 P.2d 754 (1955); Kan. Stat. Ann. 32-1002(a)(1) (unless provided in statute, rules, or regulations, it is unlawful for any person to hunt); see Kan. Att'y Gen. Op. No. 80-251; *cf. Bishop v. United States*, 126 F. Supp. 449, 451 (Ct. Cl. 1954) (no citizen has the right to hunt wildlife except as permitted by the state). Kansas law determines who may hunt, when and where they may hunt, what they may hunt, and how they may hunt. Kan. Stat. Ann. 32-919(a) (hunting license required to hunt); Kan. Stat. Ann. 32-920 (hunter education required to obtain hunting license); Kan. Stat. Ann. 32-937(l)(2) (deer permits to be restricted to particular deer species for nonresidents); K.A.R. 115-4-4 (listing allowable hunting equipment for big game); Kan. Stat. Ann. 32-1003 (listing unlawful methods of taking wildlife); K.A.R. 115-25-9 (restricting deer hunting to specific dates); K.A.R. 115-4-6 (dividing the state into deer management units).

However, Kansas law gives landowners the right to prohibit or allow hunting on their land. Kan. Stat. Ann. 32-1013 (making it unlawful to hunt on land without permission of landowner); see *Boyd v. Colgan*, 269 P. 794 (1928) (acknowledging a landowner's right to enter into a contract granting a license to hunt on land).

Does Plaintiff's right to access his land for hunting make fundamental an activity that is otherwise not protected by the Privileges and Immunities Clause? Plaintiff argues it does because the Privileges and Immunities Clause insures to non-residents the same right possessed by residents in the acquisition and enjoyment of property. *Paul v. Va.*, 75 U.S. 168, 180 (1869); *Baldwin*, 436

---

state – to belong to the people of the state..." *State v. McCullagh*, 96 Kan. 786, 153 P. 557, 559 (1915).

U.S. at 383.

Plaintiff's argument is unpersuasive.  Possession of property does not make every right associated with that property fundamental under the Privileges and Immunities Clause.  *Id.* at 388 (right must be basic and fundamental to maintenance of the union); *cf. Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 9 (1978) (although a property interest is created by state law, federal constitutional law determines whether the interest rises to a level protected by Due Process Clause).  As shown above, Plaintiff's right to hunt as a landowner is very limited.  Plaintiff's ownership of land gives him the right to access his property to engage in a non-protected activity - hunting for use of animal meat and to teach hunting traditions to his children.  The right of a nonresident landowner to access his property on equal footing with residents to hunt for these reasons is not "basic to the maintenance or well-being of the Union"; consequently, it is not fundamental under the Privileges and Immunities Clause.  *Id.*

Because Kansas laws do not infringe on rights covered by the Privileges and Immunities Clause, there is no need to continue to the second step in this analysis.  Summary judgment in favor of Defendant is granted. (Doc. 27).  Plaintiff's motion for summary judgment is denied. (Doc. 23). The Clerk is directed to enter judgment for Defendant.

SO ORDERED this 12th day of September, 2006.

s/ Wesley E. Brown

Wesley E. Brown, U.S. Senior District Judge